NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

MAR 27 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

GOVERNMENT APP SOLUTIONS, INC.,
a California corporation,

              Plaintiff-Appellant,

   v.

CITY OF NEW HAVEN; et al.,

              Defendants-Appellees,

 and

FEDERAL BUREAU OF
INVESTIGATION; et al.,

              Defendants.

No.    23-15708

D.C. No.
2:21-cv-00696-DAD-KJN

MEMORANDUM*

Appeal from the United States District Court
for the Eastern District of California
Dale A. Drozd, District Judge, Presiding

Submitted March 25, 2024**
San Francisco, California

Before:  PAEZ, NGUYEN, and BUMATAY, Circuit Judges.

---

        *        This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

        **        The panel unanimously concludes this case is suitable for decision without oral argument.  See Fed. R. App. P. 34(a)(2).

Government App Solutions appeals from the district court's judgment dismissing its lawsuit bringing claims under the Racketeer Influenced and Corrupt Organizations ("RICO") Act and various state law claims.

Government App Solutions alleges it hired an individual, Derek Bluford ("Bluford"), as an independent contractor to sell the company's products to municipalities. Without Government App Solutions's knowledge, Bluford allegedly enlisted the help of the then-mayor of Sacramento to bribe government officials to secure contracts. At some point, the Federal Bureau of Investigation ("FBI") allegedly used Bluford as an informant to ensnare others in the bribery scheme. Bluford later published a book revealing the bribery sting operation and that he was an informant for the FBI. Government App Solutions then sued various individuals, including the then-Mayor of Sacramento, and other participants in the bribery scheme, ("Defendants") for violations of the RICO Act.[1] The district court granted Defendants' motion to dismiss for lack of statutory standing, denied leave to amend, and declined to exercise jurisdiction over the state law claims.

On appeal, Government App Solutions challenges the district court's grant of Defendants' motion to dismiss. We review the district court's dismissal de novo. *Est. of Strickland v. Nevada Cnty.*, 69 F.4th 614, 619 (9th Cir. 2023). We affirm.

---

[1] A prior complaint asserted various claims against another group of defendants, including the FBI, but the current complaint does not name those defendants.

The district court properly dismissed the complaint for failing to establish statutory standing under the RICO Act. "A civil RICO plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation." *Canyon Cnty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 975 (9th Cir. 2008) (simplified). This includes a requirement of proximate causation which "generally bars suits for alleged harm that is too remote from the defendant's unlawful conduct." *Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharms. Co.*, 943 F.3d 1243, 1248–49 (9th Cir. 2019) (simplified). "[T]he central question . . . is whether the alleged [RICO] violation led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006).

> This "direct relation" requirement is based upon three practical factors, stated in *Holmes*:
>
> "First, the less direct an injury is, the more difficult it becomes to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other, independent, factors. Second, quite apart from problems of proving factual causation, recognizing claims of the indirectly injured would force courts to adopt complicated rules apportioning damages among plaintiffs removed at different levels of injury from the violative acts, to obviate the risk of multiple recoveries. And, finally, the need to grapple with these problems is simply unjustified by the general interest in deterring injurious conduct, since directly injured victims can generally be counted on to vindicate the law as private attorneys general, without any of the problems attendant upon suits by plaintiffs injured more remotely."

*Takeda Pharms.*, 943 F.3d at 1249 (quoting *Holmes v. Sec. Inv'r Prot. Corp.*, 503

3

U.S. 258, 269–70 (1992)).

Applying those three factors here, the district court properly concluded that Government App Solutions failed to allege proximate causation.

Government App Solutions alleges that it was injured by the participants in the bribery scheme because, after the FBI sting operations became public, its valuation went from $15 million to zero dollars since municipalities would no longer do business with it. But we agree with the district court that, under the first *Holmes* factor, this injury is "attributable . . . [to] other, independent, factors." *See Holmes*, 503 U.S. at 269. Even under Government App Solutions's RICO theory, the loss of value resulted from at least two additional factors—the publication of Bluford's book and the decisions of municipalities to not do business with the company. Because these independent acts each play a role in the loss of value, it would be "difficult . . . to ascertain the amount of a plaintiff's damages attributable to" Defendants' predicate acts. *See id.*; *Anza*, 547 U.S. at 458–59 (looking to possible "factors other than [defendants'] alleged acts of fraud"). And a "theory of liability [that] rests not just on separate *actions,* but separate actions carried out by separate *parties*" is insufficiently direct. *Hemi Grp. v. City of New York*, 559 U.S. 1, 11 (2010).

Moreover, lawful actions, like publishing a book or choosing not to do business with a company, can serve as independent factors rendering the purported

4

injury too indirect from the predicate RICO acts.  *See, e.g.*, *Anza*, 547 U.S. at 458 (lawful action of "offering lower prices" broke the proximate causal chain from the predicate act of failure to charge State sales tax); *Holmes*, 503 U.S. at 273 (relying on the lawful possibilities of "poor business practices or [the plaintiffs'] failures to anticipate developments in the financial markets" to conclude that the causal chain from the predicate act of stock manipulation was sufficiently attenuated).

As for the third *Holmes* factor, the availability of more directly injured victims, municipalities who were defrauded by their officials, are in a better and more direct position to sue. *See Canyon Cnty.*, 519 F.3d at 976.  As are Government App Solutions's competitors. *See Bridge v. Phoenix Bond & Indemnity*, 553 U.S. 639, 643–44, 658 (2008).  And while the second *Holmes* factor, risk of multiple recoveries, does not appear to apply here, that is not dispositive. *Anza*, 547 U.S. at 459 (concluding that proximate causation was lacking based solely on the first and third *Holmes* factors).

In sum, Government App Solutions's theory includes "[m]ultiple steps" which "separate the alleged fraud from the asserted injury." *Hemi Grp.*, 559 U.S. at 15.  The theory thus cannot sustain statutory standing.

**AFFIRMED.**